# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT GEORGIA
# ATLANTA DIVISION

CHARLINDA WILLIAMS,

*Plaintiff*,

-vs.-

FEDERAL EXPRESS
CORPORATION,

*Defendant*

Case No. 1:24-cv-01056-JPB

**Plaintiff's Opposition to Motion
to Transfer Venue**

# TABLE OF CONTENTS

INTRODUCTION ..................................................................................1

SUMMARY OF THE RELEVANT FACTS ...........................................3

ARGUMENT .........................................................................................5

   I.    Plaintiff's Choice of Forum is Entitled to Great Weight. ............................6

        A.    Plaintiff's Choice of Venue is Entitled to Greater Deference
               Because it is Grounded in USERRA's Special Venue Provision. .........6

        B.    Filing a Class Action Complaint Does Not Eliminate Deference to
               Plaintiff's Choice of Forum. ..................................................9

   II.    Plaintiff's Claims Arose in the Northern District of Georgia and the
        Locus of Operative Facts thus Disfavors Transfer. ....................................12

   III.   The Convenience of the Parties Favors the Northern District of
        Georgia. ..............................................................................12

   IV.   The Relative Means of the Parties Strongly Disfavors Transfer. ...............15

   V.    The Location of Relevant Documents Favors this District. .......................17

   VI.   The Convenience of Witnesses and Availability of Process to Compel
        Attendance of Unwilling Witnesses Do Not Support Transfer. .................18

   VII.  The Forum's Familiarity with Governing Law Does Not Favor
        Transfer. .............................................................................19

   VIII. Trial Efficiency and the Interests of Justice Do Not Favor Transfer. .........20

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Am. Spirit & Cheer Essentials, Inc. v. Varsity Brands, LLC*,
  No. 1:20-CV-03088-SCJ, 2020 WL 8115878 (N.D. Ga. Oct. 27,
  2020) ...................................................................................................................10

*Askew v. CSX Transp., Inc.*,
  Civil Action No. 08-cv-5915, 2008 WL 4347530 (E.D. Pa. Sep.
  22, 2008) ..............................................................................................................15

*In re Assicurazioni Generali S.P.A. Holocaust Ins. Litig.*,
  228 F.Supp.2d 348 (S.D.N.Y. 2002) ...................................................................11

*Brannigan v. Anthem Ins. Companies, Inc.*,
  No. 8:21-CV-2353-KKM-SPF, 2022 WL 17370470 (M.D. Fla.
  Nov. 7, 2022) .......................................................................................................19

*Coffy v. Republic Steel Corp.*,
  447 U.S. 191 (1980) ...............................................................................................8

*Cooper Tire & Rubber Co. v. McCall*,
  312 Ga. 422 (2021) .................................................................................................1

*Ellis v. Costco Wholesale Corp.*,
  372 F.Supp.2d 530 (N.D. Cal. 2005) .....................................................................7

*Ferens v. John Deere Co.*,
  494 U.S. 516 (1990) .............................................................................................22

*Gould v. Nat'l Life Ins. Co.*,
  990 F.Supp. 1354 (M.D. Ala. 1998) ....................................................................10

*Greater Yellowstone Coal. v. Bosworth*,
  180 F.Supp.2d 124 (D.D.C. 2001) .......................................................................21

*Hagin v. TA Operating, LLC*,
  No. 13-CV-80977-DLB, 2014 WL 1385709 (S.D. Fla. Apr. 9,
  2014) ....................................................................................................................16

*Hagler v. Williams*,
    No. 1:19-CV-03015-JPB, 2020 WL 13310482 (N.D. Ga. June 29,
    2020) (Boulee, J.) ................................................................................... 5

*Haley v. Delta Airlines, Inc.*,
    No. 1:21-CV-1076-TCB, 2022 WL 950891 (N.D. Ga. Mar. 29,
    2022) ................................................................................................. 20, 22

*Hall v. Buschle*,
    No. 1:22-CV-3760-JPB, 2023 WL 3666866 (N.D. Ga. May 25,
    2023) (Boulee, J) .............................................................................. 6, 12

*Hall v. L-3 Commc'ns Corp.*,
    170 F.Supp.3d 1316 (E.D. Wash. 2016) ................................................ 8

*Huntsman v. Sw. Airlines Co.*,
    Case No. 19-cv-00083-PJH, 2019 WL 3254212 (N.D. Cal. July 19,
    2019) ................................................................................................... 9, 12

*Koster v. (American) Lumbermens Mut. Cas. Co.*,
    330 U.S. 518 (1947) .......................................................................... 10, 11

*In re Laidlaw Secs. Litig.*,
    Civ. A. No. 91-1289, 1991 WL 170837 (E.D. Pa. Aug. 27, 1991) ...... 7

*Manuel v. Convergys Corp.*,
    430 F.3d 1132 (11th Cir. 2005) .......................................................... 5, 19

*McIlvaine v. Arthrocare Corp.*,
    No. 08-80343-CIV, 2008 WL 11332000 (S.D. Fla. Oct. 28, 2008) ...... 6

*McKinney v. Mo.-Kan.-Tex. R.R. Co.*,
    357 U.S. 265 (1958) ........................................................................... 7, 8

*Myrick v. City of Hoover, Alabama*,
    69 F.4th 1309 (11th Cir. 2023) ......................................................... 20, 22

*Oceana v. Bureau of Ocean Energy Mgmt.*,
    962 F.Supp.2d 70 (D.D.C. 2013) ......................................................... 21

*United States ex rel. Permenter v. eClinicalWorks, LLC*,
    No. 5:18-CV-382 (MTT), 2022 WL 906204 (M.D. Ga. Mar. 28,
    2022) ..................................................................................................... 19

*Phillips Petroleum Co. v. Shutts*,
   472 U.S. 797 (1985)..................................................................14

*Pilkington v. United Airlines, Inc.*,
   855 F.Supp. 1248 (M.D. Fla. 1994)...................................15

*In re Ricoh Corp.*,
   870 F.2d 570 (11th Cir.1989) ...............................................6

*Ritter v. Metro. Cas. Ins. Co.*,
   No. 4:19-CV-10105-KMM, 2019 WL 8014511 (S.D. Fla. Dec. 3,
   2019) ................................................................................16

*Robinson v. Giarmarco & Bill, P.C.*,
   74 F.3d 253 (11th Cir. 1996) ................................................6

*Rucker v. Great Dane Petroleum Contractors, Inc.*,
   No. 2:21-CV-207-SPC-MRM, 2021 WL 1966487 (M.D. Fla. May
   17, 2021) ......................................................................12, 24

*Scanlan v. Am. Airlines Grp., Inc.*,
   366 F.Supp.3d 673 (E.D. Pa. 2019)...........................9, 12, 14

*Shift4 Corp. v. Protegrity Corp.*,
   No. 2:13-cv-01960-APG-CWH, 2014 WL 4843679 (D. Nev. Sept.
   26, 2014) ...........................................................................19

*Shipley v. Hypercom Corp.*,
   No. 1:09-CV-0265-CAP-RGV, 2009 WL 10664453 (N.D. Ga.
   May 28, 2009).....................................................................16

*Smith v. Bayer Corp.*,
   564 U.S. 299 (2011)............................................................14

*Sorenson v. Delta Air Lines, Inc.*,
   No. 1:17-CV-00541-ELR, 2018 WL 11337604 (N.D. Ga. Feb. 16,
   2018) ................................................................................20

*Towler v. Elec. Reliability Servs., Inc.*,
   No. 1:14-CV-01940, 2015 WL 641792 (N.D. Ga. Feb. 12, 2015) ....................8

*Travers v. FedEx Corp.*,
   584 F. Supp. 3d 1 (E.D. Pa. 2022)...........................1, 13, 20, 23

*Wellens v. Daiichi Sankyo Co., Inc.*,
   No. C 13-00581 CW, 2013 WL 3242294 (N.D. Cal. June 25, 2013) ............6, 11

*Williams v. Gen. Elec. Capital Auto Lease, Inc.*,
   159 F.3d 266 (7th Cir. 1998) ..............................................................................14

*Wilson v. ChoicePoint, Inc.*,
   No. 1:05-CV-1604-JOF, 2006 WL 8432437 (N.D. Ga. Feb. 28,
   2006) ...................................................................................................................10

**Statutes**

28 U.S.C. § 1391 ...........................................................................................................8

29 U.S.C. § 1404 ...................................................................................................*passim*

38 U.S.C. § 4316 .........................................................................................................22

38 U.S.C. § 4323 ......................................................................................................1, 7

**Other Authorities**

S. Rep. 103-158 (Oct. 18, 1993) ..................................................................................8

## INDEX OF EXHIBITS

Declaration of Colin M. Downes ("Downes Decl.") with the following attachments:

**Exhibit 1**:   *Travers v. FedEx Corporation*, No. 19-6106, "Order," (E.D. Pa. May 18, 2020);

**Exhibit 2**:   Excerpts of FedEx Corporation's Form 10-K for the fiscal year ended May 31, 2023;

**Exhibit 3**:   Defendant's Responses to Plaintiff's First Set of Interrogatory Responses in *Travers v. Federal Express Corporation*, No. 19-6106 (E.D. Pa.), dated April 20, 2020;

**Exhibit 4**:   Excerpts of the FedEx People Manual (USA) Revision History from December 2, 2022, through November 29, 2023;

**Exhibit 5**:   Excerpts of the United States District Courts Federal Court Management Statistics for the reporting period ending December 31, 2023, available at https://www.uscourts.gov/statistics-reports/federal-court-management-statistics-december-2023;

**Exhibit 6**:   Excerpts of the deposition of Crystal Oliver in *Travers v. Federal Express Corporation*, No. 19-6106 (E.D. Pa.), taken April 30, 2020.

Declaration of Charlinda Williams ("Williams Decl.")

**INTRODUCTION**

Plaintiff filed this case in the Northern District of Georgia pursuant to the special venue provision of the Uniformed Services Employment and Reemployment Rights Act ("USERRA"). 38 U.S.C. § 4323(c)(2). FedEx seeks to transfer this case to the District of Delaware pursuant to 29 U.S.C. § 1404(a). None of the factors under § 1404(a) favor transfer of this USERRA action from Plaintiff's home forum, which forum is entitled to deference under USERRA's special venue provision. FedEx's entire basis for transfer is because they would prefer Judge Kearney of *the Eastern District of Pennsylvania*—who occasionally sits by designation in Delaware—to be assigned to decide this case because he previously presided over another action against FedEx alleging that its policies before March 1, 2023 violated USERRA § 4316(b).[1] Transfer to another district for

---

[1] FedEx characterizes *Travers v. Federal Express Corporation* and *Beanland v. Federal Express Corporation* as two separate cases. Practically, they constituted a single case on behalf of the same class. *Beanland* was brought as a separate case after Judge Kearney concluded in the *Travers* action that he did not have jurisdiction over the claims of Beanland (who was proposed as an additional class representative) or other out-of-state class members in the Eastern District of Pennsylvania and after the Travers action was dismissed. *See Travers v. FedEx Corp.*, 584 F. Supp. 3d 1, 9 (E.D. Pa. 2022). Jurisdiction over the claims of out-of-state class members will not be an issue here as a result of Georgia's consent jurisdiction statute. Compl. ¶ 7; *see Cooper Tire & Rubber Co. v. McCall*, 312 Ga. 422, 434 (2021).

a case to be assigned to a particular judge is not proper or even a relevant factor under § 1404(a).

FedEx suggests that Plaintiff's choice of forum and USERRA's special venue provision should be provided no deference because the Complaint is brought on behalf of a putative class. But as Judge Kearney explained in denying FedEx's similar transfer motion in one of those very cases, "[W]e do not have a certified class of employees from outside this District now. We are reviewing an employment claim brought by a citizen of this District against his employer in this District involving compensation allegedly owed to him in this District." Ex. 1 at 2 n.2. Instead of deferring to Plaintiff's choice of a home forum and USERRA's special venue provision, FedEx argues that Plaintiff's chosen venue should be given virtually no weight and that one of its couriers should be forced to bear the expense of repeatedly traveling to and from Delaware to litigate her claims. Ms. Williams has no connection to Delaware, and it would be difficult for her to attend hearings or trial there given her employment obligations, her young foster daughter who has special needs, and her limited financial resources. By contrast, FedEx is worth billions, is one of the largest airlines in the country, and has substantial operations in this district. FedEx's motion would impose significant inconvenience on Ms. Williams for no benefit to the economical resolution of this case and should be denied.

2

## SUMMARY OF THE RELEVANT FACTS

Plaintiff's Complaint alleges that Federal Express Corporation ("FedEx") violated and continues to violate the Uniformed Services Employment & Reemployment Rights Act ("USERRA") by failing to provide paid leave when employees took short-term military leave despite providing paid leave for other, comparable leave. Compl. ¶¶ 1-5. Ms. Williams resides in Marietta, Georgia. Williams Decl. ¶ 2. She has been a courier for FedEx in Marietta, Georgia for five years. *Id*. ¶ 3. Filing and keeping this action in Ms. Williams's hometown enables her to readily attend court proceedings, including trial. *Id.* ¶ 10.[2] Transferring this case to Delaware would make that difficult and often impossible. *Id.* ¶ 5.

FedEx is a Delaware corporation and the world's largest express transportation company. Ex. 2 at 2, 10. FedEx has "unmatched air route authorities and extensive air transportation infrastructure," employs more than 245,000 people, maintains 700 aircraft, and its corporate group had consolidated revenues for FY 2019 of more than $90 billion. *Id*. at 10, 48. FedEx also operates a fleet of

---

[2] Lest this Court think that a Plaintiff like Ms. Williams will not attend local hearings, Plaintiff James Scanlan—the Plaintiff and Class Representative in the similar case *Scanlan v. American Airlines*, *Inc.*—attended every substantive hearing in Philadelphia in the district court (except one held during Covid) as well as the argument at the Third Circuit. That would not have been possible except that Defendants' motion to transfer that case to Dallas was denied.

11 business jets that are available to facilitate business travel by its employees. Ex. 3 No. 3.

The Complaint alleges a single claim under USERRA challenging FedEx's policies that fail to provide paid leave for employees who took short-term military leave, but provided paid leave for comparable forms of leave. Compl. ¶¶ 78-84.

The primary fact issues in this litigation are: (1) whether FedEx's policy or practice is to provide paid leave for certain short-term leaves, but unpaid leave for short-term military leave; (2) whether short-term military leave and those other types of leaves are comparable; and (3) the appropriate relief. *Id.* ¶¶ 14-17. FedEx's policies on whether leaves are paid or unpaid are found in one of two sources. For non-pilot employees, leave policies are set forth in FedEx policy documents: the People Manual. Oliver Dep. at 30:22-31:10, 35:20-36:2, 39:23-40:7; 44:11-16. These documents are frequently updated. *See* Ex. 4. FedEx maintains electronic data regarding when its employees take leave, the duration of leave, and whether the leave is paid or unpaid. Downes Decl. ¶ 2. FedEx likewise maintains written records of complaints, grievances, and their resolution that FedEx can produce electronically. Oliver Dep. 77:2-10. For her part, Plaintiff maintains all her records related to her employment with FedEx and her service in the Air National Guard in Marietta, Georgia. Williams Decl. ¶ 4.

## ARGUMENT

Section 1404(a) permits the Court to transfer a case only if the transfer is "in the interest of justice" and "[f]or the convenience of parties." 28 U.S.C. § 1404(a). "The movant has the burden of making a strong case for transfer and if the transfer would merely shift inconvenience from one party to the other, or if the balance of all factors is but slightly in favor of the movant, plaintiff's choice of forum should not be disturbed and transfer should be denied." *Hagler v. Williams*, No. 1:19-CV-03015-JPB, 2020 WL 13310482, at *8 (N.D. Ga. June 29, 2020) (Boulee, J.) Courts in this Circuit consider the following factors in evaluating motions to transfer venue: (1) convenience of the witnesses; (2) location of relevant documents and the relative ease of access to sources of proof (3) convenience of the parties; (4) the locus of operative facts; (5) the availability of process to compel the attendance of unwilling witnesses; (6) the relative means of the parties; (7) a forum's familiarity with the governing law; (8) the weight accorded to a plaintiff's choice of forum; and (9) trial efficiency and the interests of justice, based on the totality of the circumstances. *Manuel v. Convergys Corp.*, 430 F.3d 1132, 1135 n.1 (11th Cir. 2005). Taken together, the *Manuel* factors strongly weigh against transferring this case to the District of Delaware.

## I.      Plaintiff's Choice of Forum is Entitled to Great Weight.

"[P]laintiff's choice of forum should not be disturbed unless it is clearly outweighed by other considerations." *Robinson v. Giarmarco & Bill, P.C.*, 74 F.3d 253, 260 (11th Cir. 1996) (affirming denial of transfer). Federal courts afford great deference to the plaintiff's choice of forum if the forum is in the district in which he or she resides. *In re Ricoh Corp.*, 870 F.2d 570, 573 (11th Cir.1989). This deference to a plaintiff's choice of forum is further heightened when "the operative facts giving rise to the action occurred in the chosen forum." *Hall v. Buschle*, No. 1:22-CV-3760-JPB, 2023 WL 3666866, at *4 (N.D. Ga. May 25, 2023) (Boulee, J).[3] Here, there is no dispute that Plaintiff's home is in this District. Williams Decl. ¶ 2. That alone entitles Plaintiff's choice of forum to considerable deference. But Ms. Williams has also invoked USERRA's special venue provision.

### A.      Plaintiff's Choice of Venue is Entitled to Greater Deference Because it is Grounded in USERRA's Special Venue Provision.

Where a statute contains a special venue provision, the deference afforded a plaintiff's choice of forum is heightened. *Wellens v. Daiichi Sankyo Co., Inc.,* No. C 13-00581 CW, 2013 WL 3242294, at *3 (N.D. Cal. June 25, 2013) (finding forum entitled to "greater deference" due to Title VII's special venue provision); *McIlvaine v. Arthrocare Corp.*, No. 08-80343-CIV, 2008 WL 11332000, at *1

---

[3] This issue is addressed in Part II, *infra*, in connection with the "locus of operative facts" factor.

(S.D. Fla. Oct. 28, 2008) (holding plaintiff's choice of forum heightened in Securities Act case due to special venue provision). This is so "even where that case is brought as a class action." *Ellis v. Costco Wholesale Corp.*, 372 F.Supp.2d 530, 537 (N.D. Cal. 2005) (denying motion to transfer in Title VII class action). This is because "If transfers were liberally granted [in cases with special venue provisions], courts would be undermining Congress' goal of minimizing the burden on plaintiffs who are seeking to enforce [those] laws." *In re Laidlaw Secs. Litig.*, Civ. A. No. 91-1289, 1991 WL 170837, at *2 (E.D. Pa. Aug. 27, 1991).

USERRA and its predecessors' venue provisions represent a deliberate choice by Congress to "bestow … special rights" to veterans "in furtherance of a federal policy to protect those who have served in the Armed Forces." *McKinney v. Mo.-Kan.-Tex. R.R. Co.*, 357 U.S. 265, 269 & n.1 (1958). Under USERRA's special venue provision, "an action against a private employer … may proceed in … *any district in which the private employer of the person maintains a place of business*." 38 U.S.C. § 4323(c)(2) (emphasis added). This is broader than the general federal venue statute, which requires plaintiff to sue in a district where (1) all defendants reside if they all reside in the same state, (2) a substantial part of the events or omissions giving rise to the claim occurred or (3) any defendant is subject to jurisdiction, but only if there is no other district where the claim can be

brought. 28 U.S.C. § 1391(b). Thus, USERRA provides for venue anywhere that FedEx has operations.

USERRA's venue provision supplements and adds to the general venue provision. *Hall v. L-3 Commc'ns Corp.*, 170 F.Supp.3d 1316, 1320 (E.D. Wash. 2016) (denying dismissal based on improper venue as Congress intended to expand the available places servicemembers can bring claims under USERRA). USERRA's remedial statutory scheme "must be broadly construed in favor of its military beneficiaries." *Towler v. Elec. Reliability Servs., Inc.*, No. 1:14-CV-01940, 2015 WL 641792, at *4 (N.D. Ga. Feb. 12, 2015) (quoting *Fannin v. United Space Alliance, LLC*, 2009 WL 139878, at *4 (M.D. Fla. Jan. 20, 2009), *aff'd in part*, 392 F. App'x 788 (11th Cir. 2010)); *see Coffy v. Republic Steel Corp.*, 447 U.S. 191, 196 (1980); S. Rep. 103-158 (Oct. 18, 1993). The special venue provision is one of the "distinctively federal rights" that Congress enacted so that servicemembers could expeditiously and conveniently litigate their reemployment claims. *McKinney*, 357 U.S. at 269 & n.1. Given the transient nature of many servicemembers and the scheduling obstacles they face in performing civilian and military jobs, it is critical that they can enforce their rights in any district where their employers operate and as expeditiously and cheaply as possible.

FedEx ignores USERRA decisions involving class actions on behalf of servicemember employees denying similar motions to transfer because the courts

gave weight to plaintiff's choice of forum given the special venue provision. *Scanlan v. Am. Airlines Grp., Inc.*, 366 F.Supp.3d 673, 677-78 (E.D. Pa. 2019) (denying transfer to district of defendant's headquarters as other factors did not "outweigh plaintiff's choice"); *Huntsman v. Sw. Airlines Co.*, Case No. 19-cv-00083-PJH, 2019 WL 3254212, at *3 (N.D. Cal. July 19, 2019) (denying transfer to district of defendant's headquarters after affording "plaintiff's choice of forum more weight because it arises under the USERRA, which contains an expanded venue provision"). As in these cases, USERRA's special venue provision affords greater weight to Plaintiff's choice of forum.

### B. Filing a Class Action Complaint Does Not Eliminate Deference to Plaintiff's Choice of Forum.

FedEx argues that deference to a plaintiff's choice of forum is limited in class action cases and is outweighed by the judicial economy interest in transferring this case to Delaware. Mem. at 13-15. But Judge Kearney himself rejected this argument in denying a similar transfer motion brought by FedEx:

> [T]his case is not certified and we are now proceeding solely on a statutory employment claim filed by citizen of this District who prefers to litigate in his home District … we do not have a certified class of employees from outside this District now. We are reviewing an employment claim brought by a citizen of this District against his employer in this District involving compensation allegedly owed to him in this District.

Ex. 1 at 2 n.2. Similarly, here there is not yet a certified class, but rather an individual statutory employment claim by a citizen of this District who filed in and

prefers to litigate in her home forum against a defendant with considerably more resources. As FedEx opposed class certification in *Beanland* (before settlement), ECF No. 19-2 Ex. 1 at ¶ 4, Fedex will likely oppose class certification here. If class certification is denied, this case would proceed as an individual action, in which case transfer to Delaware would be highly prejudicial.

The holding in the case on which FedEx relies to argue Plaintiff receives minimal deference to her choice of forum in a putative class action, *Koster v. (American) Lumbermens Mut. Cas. Co.*, 330 U.S. 518 (1947), was not even a class action and was expressly limited:

> We hold only that a district court, *in a derivative action,* may refuse to exercise its jurisdiction *when a defendant shows much harassment* and plaintiff's response not only discloses *so little countervailing benefit to himself in the choice of forum* as it does here, but indicates such disadvantage as to support the inference that the forum he chose would not ordinarily be thought a suitable one to decide the controversy.

*Id.* at 531-32 (emphasis added).[4] First, *Koster* was *not* a class action, but a shareholder derivative action, where the plaintiff's claims are "not his own but the corporation's." *Id.* at 522. Second, the case was based on diversity jurisdiction, filed in New York, but Illinois law applied. *Id.* at 521. Third, plaintiff admittedly

---

[4] *Koster* is also the precedent relied on by each of FedEx's other cases. *Am. Spirit & Cheer Essentials, Inc. v. Varsity Brands, LLC*, No. 1:20-CV-03088-SCJ, 2020 WL 8115878, at *16 (N.D. Ga. Oct. 27, 2020) (citing *Koster*); *Wilson v. ChoicePoint, Inc.*, No. 1:05-CV-1604-JOF, 2006 WL 8432437, at *2 n.1 (N.D. Ga. Feb. 28, 2006) (same); *Gould v. Nat'l Life Ins. Co.*, 990 F.Supp. 1354, 1358 (M.D. Ala. 1998) (same).

had no "personal knowledge" of any disputed fact. *Id.* Fourth, plaintiff "was utterly silent as to any reason of convenience" or other "advantage" to have the case "tried in New York" versus Illinois. *Id.* at 531. Fifth, at a time when travel and transportation of documents was far more cumbersome (the 1940s), all the witnesses and records were in Illinois, none were in New York, and the company had no significant operations in New York. *Id.* at 526. Finally, the analysis was not based on Section 1404(a), but *forum non conveniens*. *Id.* Thus, *Koster* does not stand for the broad proposition that deference to Plaintiff's choice of forum— particularly her home forum—is automatically reduced or eliminated merely by including class-action allegations.

Cases involving special venue provisions have concluded that class allegations did not eliminate the deference afforded to Plaintiff's chosen forum. *Wellens*, 2013 WL 3242294, at *3 (giving deference to plaintiff's choice of forum in a nationwide putative class action under Title VII); *In re Assicurazioni Generali S.P.A. Holocaust Ins. Litig.*, 228 F.Supp.2d 348, 352 (S.D.N.Y. 2002) (finding plaintiff's "choice of forum is entitled to strong deference" in securities class action "notwithstanding the fact that plaintiffs are acting in a representative capacity"). In two similar USERRA putative class actions, the courts denied transfer after according "some weight to plaintiff's choice of forum" given

11

USERRA's special venue provision. *Huntsman*, 2019 WL 3254212, at \*3;

*Scanlan*, 366 F.Supp.3d at 677-78.

## II.   Plaintiff's Claims Arose in the Northern District of Georgia and the Locus of Operative Facts thus Disfavors Transfer.

FedEx asserts that the "locus of operative facts is Memphis, the location of

FedEx's headquarters," because that is where policy decisions related to military

leave were made. Mem. at 19. But that is not how the analysis of this factor

proceeds. As this Court has previously explained, "the locus of operative facts…

'refers to the specific actions or omissions that gave rise to the cause of action.'"

*Hall*, 2023 WL 3666866, at \*3; *Rucker v. Great Dane Petroleum Contractors, Inc.*,

No. 2:21-CV-207-SPC-MRM, 2021 WL 1966487, at \*5 (M.D. Fla. May 17, 2021)

("This factor looks to 'the site of events from which the claim arises.'"). As a court

examining similar USERRA claims explained, "a breach that results from plaintiffs

being denied benefits occurs where the benefits are to be received." *Scanlan*, 366

F.Supp.3d at 678. As Ms. Williams's home and work are in Georgia, FedEx should

have provided her paid leave benefits in Georgia—where Williams resides, works,

and collects her paycheck. Williams Decl. ¶¶ 2-4. Thus, Plaintiff's claims arose in

this District, and this District is the locus of operative facts.

## III.   The Convenience of the Parties Favors the Northern District of Georgia.

FedEx states that there are "numerous conveniences to both parties" in

transfer to Delaware. Def. Mem. at 18. But this is solely based on its argument for

*judicial* economy—not any ostensible burden that would be placed on *FedEx* by litigating in Georgia as opposed to Delaware. FedEx does not articulate why litigating in Delaware would be more convenient for it than litigating in Georgia. And FedEx identifies no convenience for Plaintiff Williams.

Rather, the burdens of repeated travel to hearings and ultimately trial in Delaware would be substantial for Ms. Williams. It would burden her financially: Ms. Williams is an hourly employee at FedEx where she makes $21 per hour,[5] and repeated air travel and lodging to and from Delaware (to which Philadelphia is the nearest airport of any size) would be expensive for her – not to mention that she would need to miss work. Williams Decl. ¶ 5, 9. It would burden her personally: Ms. Williams has an autistic, four-year-old foster daughter for whom she is the primary caregiver. *Id*. ¶ 6. Ms. Williams would need to arrange childcare qualified to accommodate her foster daughter's special needs to be able to travel to and from Delaware. *Id*. It would be burdensome given her work responsibilities: she is a courier, cannot perform her duties remotely, and would need to take vacation or unpaid leave from her job duties with FedEx to travel—leave that is not always granted by FedEx. *Id*. ¶ 8. By contrast, Ms. Williams lives within commuting distance of the federal courthouse in Atlanta, and travel to and from that

---

[5] $21 per hour working 40 hours per week and 52 weeks a year is approximately $44,000.

courthouse for court appearances would be minimally burdensome relative to traveling to and from the District of Delaware. *Id*. ¶ 10. As trial in this case (which would likely last at least a week if not more) would be similarly difficult for Ms. Williams to attend if this case is transferred.

FedEx's claim that only 2.7% of the class in *Beanland* were Georgia residents does not address any factor under Section 1404(a). *See* Def. Mem. at 14. Defendant does not identify the proportion of the Class that were Delaware residents. *Id*. Moreover, Section 1404(a) only addresses "the convenience of the parties" and in a class action, "the named representative . . . is the 'party' to the lawsuit who acts on behalf of the entire class." *Williams v. Gen. Elec. Capital Auto Lease, Inc.,* 159 F.3d 266, 269 (7th Cir. 1998). Certainly "an unnamed member of a proposed but uncertified class" does not qualify as a party. *Smith v. Bayer Corp.,* 564 U.S. 299, 313 (2011). Indeed, "an absent [class member] is not required to do anything," *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 810 (1985). By contrast, courts require class representatives to attend trial and participate in other significant events in the case. A court denying transfer in a similar USERRA class action explained that where "a jury trial has been demanded, it will be imperative for the jury to see in the courtroom someone representing the class other than the lawyers, just as defendants will assuredly have their representatives present." *Scanlan*, 366 F.Supp.3d at 678. As the proposed class representative, Ms. Williams

14

will be the one who needs to attend hearings (such as class certification or approval of settlement) and trial. Not only will transfer make her attendance at hearings where her attendance is needed inconvenient and expensive, but transfer to Delaware will make it much more difficult to attend hearings or even the trial in the case. *See* Williams Decl. ¶¶ 13.

Defendant's convenience is afforded less weight where, as here, the defendant is a transportation company. *Pilkington v. United Airlines, Inc.*, 855 F.Supp. 1248, 1250 (M.D. Fla. 1994); *see Askew v. CSX Transp., Inc.*, Civil Action No. 08-cv-5915, 2008 WL 4347530 at *2 (E.D. Pa. Sep. 22, 2008) (recognizing "the convenience of [a] defense witness is traditionally given less weight when the defendant is a transportation company" in denying transfer). FedEx is a major transportation company and cargo airliner. Ex. at 22, 10. And FedEx also operates a fleet of 11 business jets that are available to facilitate FedEx business travel. Ex. 3 at No. 3. As FedEx brags to its shareholders that it "invented express distribution" and possesses "unmatched air route authorities and extensive transportation infrastructure," it cannot complain about the burden of transporting a handful of witnesses to Atlanta. *See* Ex. 2 at 9, 10.

**IV.   The Relative Means of the Parties Strongly Disfavors Transfer.**

For obvious reasons, FedEx only briefly addresses the relative means of the parties, Mem. at 15-16. Ms. Williams is an hourly worker who makes a modest

income as one of FedEx's couriers. Williams Decl. ¶ 5. FedEx is a worldwide transportation behemoth with nearly a quarter million employees, $90 billion in annual revenues, and a fleet of 700 freight aircraft and 11 business jets. Ex. 2 at 2, 10, 48; Ex. 3 No. 3. Courts facing similar asymmetries between the resources of the parties readily find this factor disfavors transfer. *Ritter v. Metro. Cas. Ins. Co.*, No. 4:19-CV-10105-KMM, 2019 WL 8014511, at *5 (S.D. Fla. Dec. 3, 2019) ("Courts have denied a motion to transfer where an individual is suing a corporation, as is the case here."); *Hagin v. TA Operating, LLC*, No. 13-CV-80977-DLB, 2014 WL 1385709, at *3 (S.D. Fla. Apr. 9, 2014) ("[A] large corporation, may more easily bear travel expenses incurred during litigation"); *Shipley v. Hypercom Corp.*, No. 1:09-CV-0265-CAP-RGV, 2009 WL 10664453, at *9 (N.D. Ga. May 28, 2009) ("Plaintiff could not possess the resources that an international corporation like defendant would have to litigate disputes in a different venue.").

FedEx instead argues that this factor is of minimal relevance because Williams has lawyers based in Washington and the District of Columbia[6] and

---

[6] None of Plaintiff's counsel are admitted to practice in Delaware, which would mean that Plaintiff would need to hire counsel in Delaware. The damages in this case are undoubtably small as the maximum damages for a 19-year class period in *Beanland* was $8.84 million. Downes Decl. ¶ 3. While there are some damages since 2023, the primarily relief in this case seeks to change FedEx's ongoing policy. As a result, there is no assurance that Plaintiff will be able to hire a firm in

because she drives a few hours to North Carolina to perform military duties. Mem. at 15. FedEx cites no authority explaining how either of these facts are relevant to the relative means of the parties or the weight that should be afforded this factor. Nor does FedEx explain how the fact that Plaintiff is able to drive about four hours to her base in the neighboring state of North Carolina—while on statutorily protected military leave from FedEx—is relevant to her ability to travel to Wilmington, Delaware. Wilmington, Delaware is a more than 11-hour drive from Atlanta (and would require hotel stays by Ms. Williams). Travel by air requires a flight to Philadelphia and then a 30-minute drive to Wilmington Delaware (which would cost another $80-90 by Uber). FedEx cannot seriously dispute that it is in a far superior financial condition and better equipped to bear any inconvenience related to venue than Ms. Williams.

## V.   The Location of Relevant Documents Favors this District.

FedEx does not identify the location of any relevant documents, except to assert that the parties may agree to use documents from *Travers-Beanland* in this case. Mem. at 19. FedEx does not contend that any relevant documents are in

---

Delaware. The firm that previously served as a "local counsel" in *Beanland* only served as a local counsel because Mr. Barton was then a partner there. It is unlikely that Mr. Barton's former firm would be willing to serve as counsel in this case, particularly given the likely size of recovery.

Delaware.[7] Many and maybe most of the documents in *Travers-Beanland* will not be useful for this case. The policies at issue in *Beanland* involved leave policies and leave data *before* 2023. *See* ECF No. 19-2 Ex. 1 at ¶ 27. Fedex's most recent People Manual, which sets forth its leave policies, was updated as recently as November 29, 2023. Ex. 4 at 1.  Documents relevant to Ms. Williams *are* located in this District: Williams keeps documents related to both her employment with FedEx and her service in the Air National Guard in Marietta, Georgia. Williams Decl. ¶ 4.

## VI.   The Convenience of Witnesses and Availability of Process to Compel Attendance of Unwilling Witnesses Do Not Support Transfer.

factors about the location of witnesses are likely neutral as between this District and the District of Delaware and thus do not favor transfer. Mem at 18-19. To the extent that there are witnesses who can testify about Ms. Williams' leaves specifically – for example, her supervisors -- they are located in this District is that is where she works.

---

[7] With the exception of documents that may have been filed on the public docket in "prior parallel cases." Mem. at 19. Only one of those cases was in the District of Delaware: *Beanland*. But needless to say, accessing PACER is no more or less burdensome for anyone regardless of the venue for this case.

## VII.   The Forum's Familiarity with Governing Law Does Not Favor Transfer.

FedEx notes that this case involves a single count under USERRA, and that courts generally find that the various judicial districts are equally well-equipped to apply federal law. Mem. at 16-17. Quite so. *United States ex rel. Permenter v. eClinicalWorks, LLC*, No. 5:18-CV-382 (MTT), 2022 WL 906204, at *4 (M.D. Ga. Mar. 28, 2022) (all federal courts equally familiar with FCA); *Brannigan v. Anthem Ins. Companies, Inc.*, No. 8:21-CV-2353-KKM-SPF, 2022 WL 17370470, at *7 (M.D. Fla. Nov. 7, 2022) (finding Indiana and South Carolina federal courts equally familiar with ERISA). Ignoring this principle, FedEx argues Judge Kearney has special expertise in USERRA based on his involvement in essentially one prior case.[8] But the factor speaks to the *forum's* familiarity with the law, not a particular judge. *Manuel*, 430 F.3d at 1135 n.1. Defendant's sole case considered the particular patent expertise of the District of Connecticut as a whole, not a specific judge's experience. *Shift4 Corp. v. Protegrity Corp.*, No. 2:13-cv-01960-APG-CWH, 2014 WL 4843679, at *1 (D. Nev. Sept. 26, 2014). Indeed, there is no guarantee that transfer to the District of Delaware guarantees that the case will be assigned to Judge Kearney – who is a judge in the *Eastern District of Pennsylvania*

---

[8] Based on the published cases, it appears that the prior FedEx appears to be Judge Kearney's only USERRA case (at least of any significance).

19

and who sat by designation in the District of Delaware. But Judge Kearney is *not among the* 15 judges from other Districts who are generally designated to decide cases in the District of Delaware. *See* https://www.ded.uscourts.gov/designation-judges-other-districts.

To the extent that familiarity with the law is a relevant consideration, the Eleventh Circuit has issued a published decision that provides clear guidance on USERRA § 4316(b) claims. *Myrick v. City of Hoover, Alabama*, 69 F.4th 1309, 1320 (11th Cir. 2023). Even before *Myrick,* other courts in this District have sufficiently been able to address USERRA claims under section 4316(b). *E.g. Haley v. Delta Airlines, Inc.*, No. 1:21-CV-1076-TCB, 2022 WL 950891 (N.D. Ga. Mar. 29, 2022); *Sorenson v. Delta Air Lines, Inc.*, No. 1:17-CV-00541-ELR, 2018 WL 11337604, at *1 (N.D. Ga. Feb. 16, 2018). Contrary to FedEx's attempt to manufacture an argument, this factor does not favor transfer.

## VIII. Trial Efficiency and the Interests of Justice Do Not Favor Transfer.

FedEx principally argues that Judge Kearney of the Eastern District of Pennsylvania, who occasionally sits by designation in the District of Delaware, is familiar with the facts and law in this case because of his involvement in *Beanland* and *Travers*. Mem. at 10-13. Section 1404(a) does not empower a court to transfer a case to a particular judge, but only to a particular district or division. 28 U.S.C. § 1404(a). In rejecting a nearly identical argument seeking transfer based on the

20

purported expertise of a single judge, another court explained, "[o]f course it is not the [transferee district] as a whole that is familiar with the earlier matter, but rather one particular judge there. "Transferring this case to another judge in that district would not seem to conserve any judicial resources at all." *Oceana v. Bureau of Ocean Energy Mgmt.*, 962 F.Supp.2d 70, 78 (D.D.C. 2013). FedEx does not explain why or how they could be assured that Judge Kearney, a judge of a *different district*, would be assigned this case.

Even if FedEx had met that burden, "that fact would not suggest that transfer there would be in the interest of justice." *Id*. at 79. "[I]f a transfer would mean that the same judge who ruled in favor of the [defendant] in the earlier case would also hear this one, then concerns about forum shopping—which implicates the 'systemic integrity' that 'the district court must weigh in the balance'—would present themselves." *Id*. (cleaned up). Concerns regarding forum shopping are heightened here where Defendant seeks to place this case not only in a specific judicial district, but explicitly to put it before a particular judge. *Greater Yellowstone Coal. v. Bosworth*, 180 F.Supp.2d 124, 130 (D.D.C. 2001) (holding a request to transfer a case to a specific judge is "suspect" due to the "plausible possibility that the defendants are using Section 1404(a) as a means of forum shopping"). The "policy against forum shopping simply requires us to interpret § 1404(a) in a way that does not create an opportunity for obtaining a more favorable

21

law by selecting a forum through a transfer of venue." *Ferens v. John Deere Co.*, 494 U.S. 516, 527 (1990). Moreover, an Eleventh Circuit decision reviewing a decision on summary judgment on a USERRA § 4316(b) claim provides clear guidance for this Court. *See Myrick*, 69 F.4th at 1320 (11th Cir. 2023) (affirming summary judgment decision that undisputed facts showed military leave and leave to perform jury duty were comparable under 38 U.S.C. 4316(b)).

Regardless, transferring this case to Delaware even if it were then assigned to Judge Kearney would have limited benefits from a trial and judicial efficiency perspective. Judge Kearney's familiarity with the facts in this case in this case is limited. First, the only substantive decisions on contested motions in *Travers-Beanland* were on motions to dismiss. Not only was the most substantive decision on USERRA reversed by the Third Circuit, but there is now a consensus on that issue. *See Haley,* 2022 WL 950891 at *6 (denying motion to dismiss and citing other cases). Second, Judge Kearney never issued an order on a contested motion for class certification. Third, as the case settled before class certification was decided Judge Kearney thus was never faced with or required to familiarize himself with the factual record on summary judgment or trial. His decision approving a settlement will not better equip him to try this case than this Court. Fourth, the relevant facts in this case will differ from *Travers-Beanland*. This case

encompasses leaves that were *not* released as part of the *Beanland* settlement.[9] As FedEx frequently revises its leave policies, the overlap in the documents produced in *Travers-Beanland* will be minimal and the depositions of FedEx employees from *Travers* (all of which were taken before March 2022) will not eliminate the need to take testimony here about post-2023 policies. Similarly, because the Class Period encompasses claims arising out of leaves not released in the *Beanland* settlement, there will be minimal (if any) overlap in the pay and leave data that FedEx will need to produce in this case and that which it previously produced.

Finally, FedEx does not address the relative congestion of dockets because that factor weighs against transfer. This is evident from the designation of 15 non-Delaware judges to hear cases in Delaware. With these additional non-Delaware judges deciding cases, the average caseload in Delaware was 559 cases and the average time from filing to trial for a civil case in the District of Delaware was 38 months. Ex. 5. As of December 31, 2023, the average judge in this District had 527 pending cases and the average time from filing to trial for a civil case was 31.0 months. *Id*. The relative congestion in the District of Delaware and the Northern

---

[9] Defendants note that the class allegations in the Complaint define the class beginning on January 1, 2023, to the present and argue that while the *Beanland* class ended on December 31, 2022, the settlement released claims through March 1, 2023. Mem. at 12-13. Plaintiff does not intend to seek to certify claims that were validly released in *Beanland*. Thus, there will be no overlap in the claims or benefit from Judge Kearney's familiarity with the release in *Beanland*.

District of Georgia does not favor transfer. *See Rucker v. Great Dane Petroleum Contractors, Inc.*, No. 2:21-CV-207-SPC-MRM, 2021 WL 1966487, at *5 (M.D. Fla. May 17, 2021) (denying motion to transfer venue where defendant did "not make any showing the [transferee forum] is less congested").

## CONCLUSION

For the foregoing reasons, Defendant's Motion to Transfer Venue should be denied.

Dated: May 9, 2024                    Respectfully submitted.

                                      */s/ Colin M. Downes*
                                      R. Joseph Barton*
                                      Colin M. Downes*
                                      BARTON & DOWNES LLP
                                      1633 Connecticut Ave., NW
                                      Suite 200
                                      Washington D.C. 20009
                                      Tel: (202) 734-7046
                                      Email: jbarton@bartondownes.com
                                      Email: colin@bartondownes.com

                                      */s/ Stephen J. Anderson*
                                      Stephen J. Anderson
                                      Georgia Bar No. 018325
                                      Kenneth S. Nugent, P.C.
                                      4227 Pleasant Hill Road
                                      Building 11, Suite 300
                                      Duluth GA 30096
                                      Tel: (770) 820-0893
                                      Email:
                                      sanderson@attorneykennugent.com

Matthew Z. Crotty*
RIVERSIDE NW LAW GROUP, PLLC
905 W. Riverside Ave.
Suite 404
Spokane, WA 99201
Tel: (509) 850-7011
Email: mzc@rnwlg.com

Thomas G. Jarrard*
LAW OFFICE OF THOMAS G. JARRARD LLC
1020 N. Washington St.
Spokane, WA 99201
Tel: (425) 239-7290
Email: Tjarrard@att.net

*Attorneys for Plaintiff Charlinda Williams*

*Admitted pro hac vice*

**Certificate of Compliance Pursuant to L.R. 7.1(D)**

The undersigned counsel certifies that this brief has been prepared with one of the font and point selections approved by the Court in L.R. 5.1(C).[10]

/s/ Colin M. Downes
Colin M. Downes
BARTON & DOWNES LLP
1633 Connecticut Ave., NW
Suite 200
Washington D.C. 20009
Tel: (202) 734-7046
Email: colin@bartondownes.com

---

[10] The operative local rules require that "counsel must certify that the brief has been prepared with one of the font and point selections approved by the Court in LR 5.1(B)." L.R. 7.1(D). This appears to be a scrivener's error, as the font and point selections approved by the Court are set forth in Local Rule 5.1(C). Counsel has thus certified compliance with that provision of the Local Rules.